JOSHUA BALLARD *vs.* BALLARD VALE COMPANY.

A quitclaim deed to the mill-owner from the owner of land flowed by a milldam will not prevent a previous mortgagee from maintaining a complaint under the Rev. Sts. c. 116, for subsequent flowing.

The owner of land flowed by a milldam to a certain height under a grant from him, and to an additional height without his leave, conveyed the land to a third person, and took back a mortgage thereof, each of which contained a covenant of freedom from incumbrances, excepting so far as the owner of the mill might have acquired a right to flow the premises. *Held,* that this did not authorize the mill-owner to flow above the limits before granted.

[The mortgagor of land taken by a railroad corporation for the purpose of their road may recover the full amount of damages, without regard to the mortgages. 470, *note.*]

COMPLAINT under the mill act, Rev. Sts. c. 116. The case was submitted to the decision of the court upon the following statement of facts :

The respondents had erected a milldam in Andover across the Shawsheen River, and thereby flowed the land of the petitioner, who granted to them the right to flow his land to the height of certain fixed marks. In 1847 the respondents raised their dam a foot, and thereby flowed the petitioner's land to a much greater height than they had before flowed, or than they

had a right to flow it under any grant or agreement. On the 20th of March 1848 the petitioner conveyed the premises to John Marland for $6,000, and took back a mortgage to secure the payment of two thirds of the purchase money. Both the deed and the mortgage contained a covenant " that the premises are free from all incumbrances, excepting so far as the Ballard Vale Company may have heretofore acquired a right to flow some part of the premises;" and the mortgage provided that the mortgagor should retain possession until breach of condition. Marland entered upon the premises, and remained in possession until the 7th March 1850, when the defendants entered for breach of condition, and have since foreclosed. On the 14th of December 1848, Marland, in consideration of $1,000 paid to him by the respondents, executed a release and quitclaim to them, in fee, of all his right, title, interest and estate in the land, "so far and so high as the same may be flowed by said company's raising or maintaining their dam as high" as certain marks, fixing the height to which it had been raised in 1847.

This case was argued in writing, and decided at Boston in June 1856.

*D. Saunders, Jr.* for the petitioner.

*O. P. Lord & J. W. Perry,* for the respondents. The respondents flow the land by virtue of the Rev. Sts. *c.* 116, and not under any right conferred by the owner of the land. *Charles* v. *Monson & Brimfield Manuf. Co.* 17 Pick. 77. *Seymour* v. *Carter,* 2 Met. 520. *Walker* v. *Oxford Woollen Manuf. Co.* 10 Met. 203. *Fuller* v. *French,* 10 Met. 359. The owner of land, besides past damages within three years, may have his future annual damages assessed, and also a sum in gross for all future damages; and if he elects to receive and is paid that sum, the mill-owner may continue to flow without paying any further compensation. Rev. Sts. *c.* 116, § 19–22. The flowing of the land gives the mill-owner no right in the soil, but is only an injury to the possession; and this process is simply to recover money as a compensation for that injury. *Seymour* v. *Carter,* 2 Met. 520. *Clement* v. *Durgin,* 5 Greenl. 9.

The mortgagor in possession is owner of the land, as against

all the world but the mortgagee; he may maintain actions for injuries to the land, and give releases for all such injuries. *Keach* v. *Hall,* 1 Smith's Leading Cas. 293, *& notes.* 2 Cruise Dig. (Greenl. ed.) tit. 15, *c.* 2, § 1, *& notes. White* v. *Whitney,* 3 Met. 84. He may therefore have this process, and have the damages assessed in either of the forms authorized by the statute; and if he elects to be paid in gross, and is paid, the mill-owner may flow without further compensation. *Breed* v. *Eastern Railroad,* Essex, November term 1840.* And he may do by agreement all that he can do by legal process.

The deed of Marland to the respondents, although not sufficient to convey the land flowed, in fee, as against the petitioner, is at least an acknowledgment of the receipt of the money, and a license to flow to the height fixed, without paying further compensation; for even a parol release of the damages is sufficient. *Seymour* v. *Carter,* 2 Met. 521.

MERRICK, J. The flowing of the complainant's land by a dam, erected in and across the Shawsheen River for the purpose of raising a head of water wherewith to work their mill, is conceded by the respondents. Upon the statement of facts to which the parties have agreed, it is clear that the complainant is entitled to recover compensation for the injury to which his estate has thus been subjected; and that a warrant ought to be issued to summon a jury to assess the damages for the three years next preceding the institution of the complaint, and from thence down to the time of the rendition of their verdict; and

---

* HENRY A. BREED *vs.* EASTERN RAILROAD COMPANY.

PETITION for a jury to assess the damages sustained by the taking of land for a railroad. The sheriff certified to the court of common pleas this ruling: " On the hearing, the sheriff instructed the jury that the petitioner, notwithstanding there existed several mortgages on the estate, was entitled to damages under his petition, to the same extent as if no mortgages had existed upon the estate." The case came by appeal from the court of common pleas to this court, who, after argument, affirmed the sheriff's ruling.

*J. W. Proctor & T. B. Newhall,* for the petitioner.

*N. J. Lord,* for the respondents and the mortgagees.

also to ascertain and determine the annual future damages, and what sum would be a just and reasonable compensation for all the damages to be thereafter occasioned by the use of the dam, and for the right of maintaining, keeping it up and using it forever. Rev. Sts. *c.* 116, § 4.

When the complainant took possession of the premises for breach of the condition contained in the mortgage, his title thereto was perfect against the world, excepting only the right of Marland, the mortgagor, and his assigns, to redeem the same. That right having never been exercised, and being now entirely foreclosed and extinguished, the complainant's title is complete and unimpeachable. *Ritger* v. *Parker,* 8 Cush. 145.

The respondents have never had any interest in the premises, except that which they derived from Marland, the mortgagor. His deed to them was a mere quitclaim and release of all his right, title and interest in the premises; and these consisted only of the right of redemption, and the right of possession previous to a breach of the condition of the mortgage. Of the former the respondents have never availed themselves; and of the latter they have had the uninterrupted advantage and enjoyment—no claim being made for damages occasioned by the flowing before the time when the complainant entered upon and took possession of the premises for breach of the condition of the mortgage, and to foreclose the right in equity of redemption. The right of the respondents is now superseded by the paramount title of the complainant; and they have therefore no defence to set up against the complaint, and can show no reason why it should not be maintained.

It has been argued, for the respondents, that a mortgagor in possession has the power and right effectually to release and discharge a mill-owner from all claims for damages which have been or which may be occasioned to the mortgaged premises, either by the past or the future maintenance of the dam, used and to be used forever, for the purpose of raising water to work his mill. Without intending in any degree to sanction that proposition, as a principle of law resulting from a just interpretation of the provision of the statute for the support and regula-

tion of mills, it is sufficient to say, that the determination of this question is not requisite in this case; for it does not appear that Marland has released or discharged, or even attempted to release or discharge the respondents from all the claims to which they were or might become liable by reason of the maintenance of their dam, and the consequent injury to the complainant's land by overflowing it with water. It is true that, while he was in possession of the premises, he made a deed to them, granting, releasing and quitclaiming all his right, title, interest and estate in the land. But this was only a conveyance of the interest of the mortgagor in the land, and did not purport to be a relinquishment of any claim for compensation, even for the injury which he himself had sustained; much less for that which might be done to the right and interest of the mortgagee, whose title to the estate was superior and paramount to his own.

Before the conveyance to Marland, the respondents had acquired, by an absolute grant from the complainant, the unconditional right of flowing the premises by raising their first dam to certain fixed marks. It is to this right that the exception in the covenants in the complainant's deed to Marland must, upon the facts stated by the parties, be construed as referring. This is the only license ever given by the complainant. It is a mistake to suppose that, by his deed to Marland, he conceded or conveyed to the respondents the further privilege of flowing all the land which was then in fact overflowed and covered with water, without their making compensation therefor according to law. There is nothing in the instrument to indicate any such purpose or intention. Sometimes a grant or conveyance is held to have the effect of a covenant by way of estoppel; but no such consequence has ever been attributed, or is attributable, to a refusal to enter into a covenant, or to assume the obligations of a warranty, against either an alleged or a possible incumbrance. By such refusal the complainant conferred no rights upon others, nor surrendered any upon which, in his own behalf, he had a right to insist.

*Warrant for a jury to issue.*